UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TAYSIR SHEIKA | : | CIVIL NO.  06-CV-1876(RNC)(DFM) |
| v. | : | |
| FRED LEVESQUE ET. AL. | : | OCTOBER 6, 2008 |

### DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT

The plaintiff, Taysir Sheika, a sentenced New Jersey state prisoner who was temporarily transferred to the Connecticut Department of Correction (DOC), filed this civil rights action against three DOC officials, Fred Levesque, the Director of Offender Classification and Population Management, Lynn Milling, the Connecticut DOC Interstate Compact Administrator, and Stephen Clapp, a classification hearing officer in the Offender Classification and Population Management Unit (OCPMU). The defendants moved for summary judgment in their favor, and by Memorandum and opposition papers dated September 10, 2008 but not received until September 25, 2008, plaintiff concedes he received a Notice and a Hearing prior to placement in Administrative Segregation. The only alleged dispute is that plaintiff claims there was "no evidence" on which to base plaintiff's classification. Plaintiff's real dispute is not with the defendants, but rather New Jersey prison officials. Here, the defendants relied in good faith on the documents and information supplied by New Jersey, and it is not in dispute that plaintiff was identified "as a possible co-conspirator to escape plans in New Jersey DOC." Complaint ¶21. Indeed, at the time of the classification hearing it was reasonably believed that plaintiff had knowledge of conveying explosives into a New Jersey prison. For the reasons discussed below and in defendants' opening brief and moving papers, the defendants are entitled to summary judgment.

1

## I. PLAINTIFF DOES NOT EVEN ADDRESS THE LIBERTY INTEREST QUESTION, BUT RATHER ASSERTS, IN DELPHIC FASHION THAT A LIBERTY INTEREST EXISTS

Plaintiff's brief incorrectly asserts that "fact-finding" is necessary to determine the existence of a liberty interest. No such fact finding is required, as it is clear that state procedures do not create federal rights.[1] The plaintiff bears the burden of demonstrating the existence and infringement of a protected liberty or property interest. See Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir. 1996). If the plaintiff is unable to show the existence of a protected interest, **the claim must be dismissed regardless of whether the defendants acted in accordance with the requisite procedures.** See id. at 317-18. (emphasis added); see also Reid v. Armstrong, 3:03CV208(JCH)(D.Conn. March 29, 2005), slip op at 8. (attached to defendants' opening memorandum). Plaintiff utterly fails to address the analysis set forth by the Second Circuit in Frazier. The Second Circuit stated, "To prevail, Frazier must establish both that the confinement or restraint creates an 'atypical and significant hardship' under Sandin, **and** that the state has granted its inmates, by regulation or by statute, a protected liberty interest in remaining free from that confinement or restraint." Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir. 1996)(emphasis added). Here, plaintiff cannot point to any Connecticut statute or regulation which grants plaintiff a constitutionally protected liberty interest to remain free from Administrative Segregation. To the contrary, state law in Connecticut authorizes the Commissioner of Correction to exercise broad discretion as to how to classify and assign inmates to

---

[1] It is also clear that no fact finding is necessary because even assuming *arguendo* that the conditions alleged do amount to "atypical and significant deprivation" under Sandin v. Conner, 515 U.S. 472, 484 (1995), such a determination only would require a due process hearing along the lines of that set forth in Wilkinson. There is no material dispute that the procedures employed in this case exceed the level of due process required by Austin v. Wilkinson, 545 U.S. 209, and Hewitt v. Helms, 459 U.S. 460. A.D. 9. 4 provides for written notice and a formal hearing which even allows for witnesses, something not required by the Supreme Court in Hewitt or Wilkinson. Plaintiff

2

various correctional facilities. Conn. Gen. Stat. §18-86 authorizes transfers from one facility to another "when it appears to the commissioner that the best interests of the inmate or the other inmates will be served by such action."[2] There are no Connecticut state regulations which govern inmate classification. However, the written policy statements of the Connecticut Department of Correction (DOC) set forth in Administrative Directive (A.D.) 9.4, ¶12 expressly gives broad discretion to defendant Levesque, the Director of Classification and Population Management, as to whether to place any inmate, including plaintiff, on Administrative Segregation Status. A.D. 9.4, ¶12 states in relevant part:

> **Placement of an inmate on Administrative Segregation shall be at the discretion of the Director of Offender Classification and Population Management in accordance with this Directive.**

Plaintiff's opposition fails to address the vast weight of authorities which hold that where there is discretion, there can be no liberty interest. See e.g. Meachum v. Fano, 427 U.S. 215, 224 (1976);

---

makes no claim of inadequate notice or failure to hold a hearing. His only quibble is that there was not sufficient evidence to meet the "some evidence" standard. Plaintiff is mistaken.

[2] See Cofone v. Manson, 594 F.2d 934, 938 (2d Cir. 1979) (holding that Connecticut law provided no basis for inmate's contention that he had a right or justifiable expectation that he would not be transferred to an interstate prison absent misbehavior or some other specified event); Ziemba v. Thomas, 390 F. Supp. 2d 136, 153 (D. Conn. 2005) (noting that Connecticut prison officials have broad discretion to transfer prisoners); Tart v. Warden, 46 Conn. Supp. 546, 548, 759 A.2d 564 (Conn. Super. Ct. 2000)(stating that prisoner petitioner "has no right to a hearing in Connecticut when being transferred from facility to facility"). "According to Section 18-86 of the Connecticut General Statutes, the 'commissioner may transfer any inmate of any of the institutions or facilities of the department to any other such institution of facility . . . when it appears to the commissioner that the best interest of the inmate or other inmates will be served by such action.' Accordingly, because Price has no liberty interest upon which his due process claim may rest, summary judgment on this claim is granted." Price v. Armstrong, No. 3:03CV1156(DJS), 2006 U.S. Dist. LEXIS 20668, 13-14 (D. Conn. Apr. 11, 2006). Plaintiff's reference to a 2007 case which post-dates the events in this case, Sheika v. NJDOC, 928 A.2d 878 (N.J. Super. 2007) is irrelevant. New Jersey's procedures far exceed what is required constitutionally. Under Meachum v. Fano, supra, and Olim v. Wakinekona, 456 U.S. 1005 (1983) no hearing is required prior to an interstate transfer. New Jersey's procedures also exceed Wolff v. McDonnell, 418 U.S. 539 (1974) and include

Moody v. Daggett, 429 U.S. 78, 99 n.9 (1976). (No liberty interesting classification); Madewell v. Roberts, 909 F.2d 1203, 1207 (8th Cir. 1990) (no due process issue in class status of prisoner where prisoner failed to point out any state statute, regulation or policy statement that limited prison officials' discretion in classifying prisoner).  Plaintiff fails to address the numerous cases from this District Court, some of which have been reviewed and affirmed by the Second Circuit, which hold that there is no liberty interest created by Connecticut law or  DOC Administrative Directives. Green v. Armstrong, No. 3:96cv1127(AVC)(TPS), slip op. at 10 (D. Conn. Feb. 25, 1998), aff'd, No. 98-3707 (Aug. 20, 1999) (summary order). Torres v. Stewart, 263 F.Supp. 463, 470 (D.Conn. 2003). (emphasis added).  In Pugliese v. Nelson, 617 F.2d 916 (2d Cir. 1980)  the Second Circuit stated emphatically:

> Moreover, judicial intervention into t**he classification of prisoners for monitoring and control purposes** would almost inevitably involve the federal courts in the day-to-day operations of our prison system, which are better left to the expertise of prison administration authorities.

*Id*. at 925, *citing* Bell v. Wolfish, 441 U.S. 520, 547-48 (1979)(emphasis added).  Manley v. Bronson, 657 F. Supp. 832, 836 (D. Conn. 1987); Taylor v. Levesque, No. 3:03CV1347 (HBF), 2005 U.S. Dist. LEXIS 28863, (D.Conn. November 10, 2005), affirmed 2007 U.S. App. LEXIS 21178 (2d Cir., Sept. 5, 2007) (Because Taylor has no protected liberty interest in any particular classification, his due process claim necessarily fails). Taylor v. Levesque is particularly instructive as the plaintiff in Taylor makes the same arguments as plaintiff Sheika in this case.[3] Taylor claimed that A.D. 9.4 and A.D. 9.5 create a liberty interest. This Court rejected that claim and stated,

---

confrontation and cross-examination. None of this applies to a classification decision for security and escape risk.

[3] Plaintiff Sheika in his Rule 56(a)(2) Statement at page 15, ¶ 22 mistakenly asserts that Connecticut has granted its inmates a liberty interest in remaining free from Administrative Segregation (A.S.). Plaintiff cites to A.D. 9.4 ¶12 which provides that placement in A.S. is at the discretion of the Director of Classification and Population Management. The presence of discretion defeats, as a matter of law, the plaintiff's assertion of a protected liberty interest.

4

"Taylor cannot rely merely upon the mandatory nature of language in state statutes or prison directives to demonstrate a violation of due process. See Malsh v. Austin, 901 F. Supp. 757 (S.D.N.Y. 1995). An inmate's right to have relevant laws, regulations and directives obeyed is not a federal right protected by the civil rights statute or the Constitution. See Smith v. O'Connor, 901 F. Supp. 644, 647-48 (S.D.N.Y. 1995) (citing cases)." Taylor v. Levesque, 2005 U.S. Dist. LEXIS 28863 (D. Conn. Nov. 9, 2005)(rejecting the claim that A.D. 9.4 creates a liberty interest). The Second Circuit affirmed in Taylor, and in words particularly applicable to this case stated,

> Moreover, Connecticut has not granted inmates, by regulation or statute, a protected interest in their security classification; the matter is committed to the discretion of the Commissioner of Corrections. See Wheway v. Warden, 215 Conn. 418, 576 A.2d 494, 501 (Conn. 1990); Santiago v. Comm'r of Corr., 39 Conn. App. 674, 667 A.2d 304, 307 (Conn. App. Ct. 1995) (holding that a prisoner challenging his designation as a security risk has "no property or liberty interest in prison employment, increased recreation[,] . . . educational courses. . . . [or] access to visitors"). Taylor has failed to show that his classification impacted any particular entitlement under Connecticut's statutes or regulations. The provisions Taylor cites pertain to the procedures applicable to disciplinary violations, not security classifications. The hardships of which Taylor complains are incident to his classification as a security risk; they are not punishments for a disciplinary violation. And Taylor admits that he has been charged with no such violation.
>
> Taylor v. Levesque, 246 Fed. Appx. 772, 774 (2d Cir. 2007).

Most recently, this Court in Thompson v. Lantz, 3:04CV2084(AWT)(DFM)Ruling on Motion to Dismiss [Doc. # 77](D.Conn. September 4, 2008)(attached), granted a motion to dismiss for failure to state a claim where, like here, Connecticut prison officials relied on information provided by the Federal Bureau of Prisons and placed an inmate in Administrative Segregation. This Court stated,

> The hearing officer issued a written decision recommending placement in administrative segregation with a review in six months for possible reintegration into general population, and Fred Levesque, the Director of the Office of Classification and Program Management authorized the plaintiff's placement in administrative segregation based on his past behavioral history in the Federal Bureau of Prisons. The plaintiff received a copy of this written decision and filed an appeal of the decision raising multiple claims and attaching exhibits. Fred Levesque denied the appeal on March 11, 2004. The plaintiff has failed to allege facts that could establish that he did not receive the procedural due process protections to which he was

5

>entitled prior to his placement in administrative segregation in February 2004. Accordingly, the motion to dismiss on this ground is being granted. Id. Slip op. at 9-10

The same analysis applies in this case.[4] Plaintiff mistakenly cites to procedures and standards which are applicable to disciplinary violations. See Plaintiff's Memorandum at 9 citing to Superintendent v. Hill, 472 U.S. 445 (1985) and Taylor v. Rodriguez, 238 F.3d 188 (2nd Cir. 2001). These cases involve disciplinary reports and the level of evidence required to revoke previously earned good time. Here, as in Taylor v. Levesque, plaintiff Sheika was considered as a potential escape risk and was possibly involved in a plan to convey explosives into a New Jersey state prison. The classification of plaintiff in this case to risk level 5 due to this potential involvement was a security risk classification and the hardships of which plaintiff complains are reasonably related to increased monitoring and control of the plaintiff while he adjusted to confinement in Connecticut. As noted above, in Pugliese v. Nelson, 617 F.2d 916 (2d Cir. 1980) the Second Circuit stated emphatically:

>Moreover, judicial intervention into t**he classification of prisoners for monitoring and control purposes** would almost inevitably involve the federal courts in the day-to-day operations of our prison system, which are better left to the expertise of prison administration authorities.

*Id*. at 925. Connecticut inmates have no state or federally created liberty interest in their classification. See Allen v. Armstrong, No. 3:98cv668 (PCD), slip. op. at 2 (D. Conn. Sept. 15, 2000) (holding that the due process clause affords prisoners no protection from erroneous classifications); Nieves v. Coggeshall, 2000 U.S. Dist. LEXIS 16296, No. 3:96cv1799 DJS, 2000 WL 340749, at *5 (D. Conn. Jan. 31, 2000) (holding that inmate has no protected liberty interest in his classification). Since there is no state created liberty interest in remaining free from A.S., plaintiff's due process claim crumbles at its foundation. Watson v City of New York, 92 F.3d 31, 37-38 (2d Cir 1996) (state rules of procedure do not create liberty interests entitled to protection under the Due Process clause) citing Olim v. Wakinekona, 461 U.S. 238, 250, 103 S.Ct 1741

6

(1983); Sealey v. Giltner, 116 F.3d 47 (2d Cir. 1997); Brooks v. DiFasi, 112 F.3d 46 (2d Cir. 1997); Miller v. Selsky, 111 F.3d 7 (2d Cir. 1997). This is a question of law which can be resolved on summary judgment without any factfinding. Accordingly, the defendants' summary judgment motion should be granted.

**II. ASSUMING, ARGUENDO, THERE IS A LIBERTY INTEREST IN NOT BEING CLASSIFIED INTO ADMINISTRATIVE SEGREGATION, THE DUE PROCESS PROVIDED PLAINTIFF EXCEEDS THE CONSTITUTIONAL MINIMUM**

Plaintiff mistakenly applies the higher level of due process which applies to disciplinary sanctions, to the more informal procedures required for A.S. classification decisions. Taylor v. Rodriguez, 238 F.3d 188, 192 (2d Cir. 2001).[5] In Austin v. Wilkinson, 545 U.S. 209, the Supreme Court reaffirmed that the informal procedural protections of Hewitt still apply to placements in Ohio's Supermax. "Where the inquiry draws more on the experience of prison administrators, and where the State's interest implicates the safety of other inmates and prison personnel, the informal, nonadversary procedures set forth in Greenholtz, 442 U.S. 1, 60 L. Ed. 2d 668, 99 S. Ct. 2100, and Hewitt v. Helms, supra, provide the appropriate model." Wilkinson, at 228-229. The formal written notice, written hearing summary and due process procedures outlined in A.D. 9.4, attached to the affidavits of Mr. Clapp and Mr. Levesque, and afforded to the plaintiff far exceed the "informal" notice and nonadversarial opportunity to be heard, which is all that Hewitt and Wilkinson require.[6]

---

[4] Thompson was in Northern for 8 months, more than twice the length of time of Mr. Sheika here.

[5] In Taylor v. Rodriguez, the Second Circuit did not decide the liberty interest question, and instead, remanded, stating, "We also leave for the district court the issue of whether plaintiff has satisfied the second part of his burden in showing a protected liberty interest . We require plaintiffs such as Taylor not only to establish an atypical and significant hardship, but also to show that 'the state has granted its inmates, by regulation or by statute, a protected liberty interest in remaining free from that confinement.' Frazier, 81 F.3d at 317." Taylor at 196.

[6] Plaintiff complains that he was given a hearing by Mr. Clapp, as a hearing officer, and was not given a chance to be heard by the decision maker. There is nothing in any of the cases which prohibits a decision maker from using a hearing officer, not is there any case law requirement that necessarily entails a face to face meeting with the decision maker. Indeed, the federal courts employ

7

Plaintiff's reliance on prison disciplinary cases, where objective fact finding and "some evidence" is required is entirely misplaced, where the decision here is a classification decision based on subjective, indeed, imponderable factors. Plaintiff mistakenly relies on Sira v. Morton, 380 F.3d 57 (2nd Cir 2004) and Lenea v. Lane, 882 F.2d 1171 (7th Cir. 1989). Plaintiff's memo at 9-11. Lenea involved disciplinary procceedings requiring a finding of some evidence and a conclusion of guilt, resulting in disciplinary segregation of 360 days. Similarly, Sira v. Morton and Zavaro v. Coughlin, 970 F.2d 1148 (2nd Cir 1992)(Plaintiff's memo at 11) involved disciplinary proceedings, not applicable here. Plaintiff's memorandum argues that the reports on which plaintiff's A.S. placement "do not point to his guilt." This is plaintiff's fundamental misunderstanding. It is not necessary to find guilt in order to place an inmate in A.S. for "adjustment" purposes. Placement in A.S. is not a disciplinary sanction or punitive confinement based on objective findings of wrongdoing but rather a security placement based on subjective factors predicting future security risks. The fundamental differences between discipline and classification are completely confounded by plaintiff leading to his misplaced reliance on disciplinary hearing cases.

Moreover, defendants are entitled to act preventatively, in advance of a riot or an escape plan, and are charged with anticipating potential security problems. See Jones v. North Carolina Prisoners' Union, 433 U.S. 119 (1977). The United States Supreme Court, in Hewitt v. Helms, 459 U.S. 460, 103 S. Ct. 864, 74 L. Ed. 2d 675 (1983) made these observations about predicting future

---

a similar system and many District Judges utilize United States Magistrate Judges to hear prisoner cases and provide Reports and Recommendations, but ultimately the decision maker in those cases is the District Judge. See McCarthy v. Bronson, 500 U.S. 136 (1991); 28 U.S.C. §636(b)(1)(B). In any event, plaintiff's statement that he "was not part of the escape plan…" as recorded by Mr. Clapp was in fact read in its entirety by the decision maker, Mr. Levesque, when he reviewed the entire Report of the Hearing. Based on all the evidence, Mr. Levesque reasonably and prudently exercised his professional discretion to place plaintiff on A.S. for a period of adjustment of 3 months. This was a classification based on security and escape risks and was not a disciplinary "fact-finding" decision requiring "some evidence."

risk and the subjective, "imponderable" factors that enter into the calculus of an Administrative Segregation decision:

> In assessing the seriousness of a threat to institutional security, prison administrators necessarily draw on more than the specific facts surrounding a particular incident; instead, they must consider the character of the inmates confined in the institution, recent and longstanding relations between prisoners and guards, prisoners inter se, and the like. In the volatile atmosphere of a prison, an inmate easily may constitute an unacceptable threat to the safety of other prisoners and guards even if he himself has committed no misconduct; rumor, reputation, and even more imponderable factors may suffice to spark potentially disastrous incidents. The judgment of prison officials in this context, like that of those making parole decisions, turns largely on "purely subjective evaluations and on predictions of future behavior, " Connecticut Board of Pardons v. Dumschat, 452 U.S. 458, 464 (1981); indeed, the administrators must predict not just one inmate's future actions, as in parole, but those of an entire institution.

Id. at 474, 103 S.Ct at 873. The same can be said here for the risk assessment that had to be made with regard to the plaintiff. Plaintiff is woefully mistaken when he alleges in his complaint that plaintiff "never was found guilty of a disciplinary infraction involving an escape plan and no sanction including Administrative Segregation was ever imposed upon him as a result of such disciplinary infraction,…" Complaint at ¶51. As stated by the Supreme Court in Hewitt, supra, "an inmate easily may constitute an unacceptable threat to the safety of other prisoners and guards even if he himself has committed no misconduct;" There is no requirement that a disciplinary finding of guilty or "some evidence" of guilt must be made before a classification decision to place someone in Administrative Segregation.

### III. PLAINTIFF'S RETALIATION CLAIM IS MERITLESS

In the second count of his complaint, plaintiff alleges retaliation against him solely because he is a Muslim. His claims are more properly directed toward New Jersey prison officials who transferred him to the Connecticut DOC. Plaintiff offers no evidence that his religion was a motivating factor in the classification decision, but rather only offers his own speculation. The

9

Second Circuit has repeatedly cautioned courts about retaliation claims made by prisoners stating, "we recognize both the near inevitability of decisions and actions by prison officials to which prisoners will take exception and the ease with which claims of retaliation may be fabricated, we examine prisoners' claims of retaliation with skepticism and particular care. Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983)." Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. N.Y. 1995). "Complaints relying on civil rights statutes are plainly insufficient unless they contain some specific allegation of fact indicating a deprivation of civil rights, rather than simple conclusions." Koch v. Yunich, 533 F. 2d 80, 85 (2nd Cir. 1976) (emphasis added); see, e.g. Powell v. Jervis, 460 F.2d 551, 553 (2d Cir. 1976); Louis v. Ward, 444 F.Supp. 1107, ll09 (S.D.N.Y. 1978). A complaint relying on civil rights "must set forth facts showing some intentional and purposeful deprivation of constitutional rights." Snowden v. Hughes, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944). Plaintiff offers nothing more than his conclusory speculation that he was allegedly subject to "retaliation" when he was classified as a high security risk and placed in A.S. at Northern CI. The defendants' moving affidavits amply demonstrate that plaintiff's A.S. classification was independently justified on legitimate grounds, e.g. avoiding escape risk and reducing the chances of plaintiff becoming a "big wheel" in Connecticut's prisons as he had become in New Jersey, grounds other than the improper one which defeats the claim of retaliation. See Mt. Healthy City Bd. of Ed. v. Doyle, 429 U.S. 274, 287(1977); Wilkie v. Robbins, 127 S. Ct. 2588, 2602 (2007); Lowrance v. Achtyl, 20 F.3d 529, 535 (2d Cir. 1994).

## CONCLUSION

For all of the foregoing reasons and for those raised in the defendants' opening brief and moving papers, the defendants respectfully request the Court to grant their motion for summary judgment as to all counts of the complaint and enter judgment in favor of the defendants.

```
                                        DEFENDANTS
                                        Fred Levesque, et al.

                                        RICHARD BLUMENTHAL
                                        ATTORNEY GENERAL


                                  BY:   _____
                                        Steven R. Strom
                                        Assistant Attorney General
                                        110 Sherman Street
                                        Hartford, CT  06105
                                        Federal Bar #ct01211
                                        E-Mail:  steven.strom@po.state.ct.us
                                        Tel: (860) 808-5450
                                        Fax: (860) 808-5591
```

## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed to the following on this 6th day of October, 2008:

Taysir Sheika, NJ #263137 / 753320-B
New Jersey State Prison
PO Box 861
Trenton, NJ 08625

_____
Steven R. Strom
Assistant Attorney General