```
                 UNITED STATES DISTRICT COURT
                   DISTRICT OF CONNECTICUT
```

TAYSIR SHEIKA,                     :

    Plaintiff,                 :
                                              PRISONER
V.                                 :     Case No. 3:06-CV-1876(RNC)

FRED LEVESQUE, ET AL.              :

    Defendants.                :

## RULING AND ORDER

Plaintiff Taysir Sheika, a New Jersey inmate proceeding pro se and in forma pauperis, brings this action under 42 U.S.C. § 1983 against three officials of the Connecticut Department of Correction ("DOC") in both their official and individual capacities. The defendants are responsible for making classification decisions regarding DOC inmates. This action arises from their decision to place the plaintiff in administrative segregation at Northern Correctional Institution when he first arrived in Connecticut following his involuntary transfer from New Jersey under the Interstate Corrections Compact. Plaintiff claims that the defendants retaliated against him for practicing his religion and also violated his right to procedural due process.[1] The defendants have moved for summary judgment contending that their classification decision reflects

---

[1] Plaintiff initially claimed a violation of his substantive due process rights under the Interstate Corrections Compact and the New Jersey Administrative Code but that claim has been abandoned.

appropriate exercise of their broad authority and that the process the plaintiff received was adequate. I agree and therefore grant the motion.

I.  Background

The summary judgment record, viewed in a light most favorable to the plaintiff, would permit a jury to find the following. Plaintiff is a practicing Muslim, a native of Palestine and a naturalized citizen of the United States. In 1994, he began serving a thirty-to-sixty year sentence of incarceration in New Jersey State Prison.

In January 2006, the Special Investigations Division of the New Jersey Department of Correction ("SID") conducted an investigation into an alleged inmate escape plot involving explosives. SID determined that a New Jersey inmate, Abdel Saleh, had solicited inmates to plan an escape. Saleh was plaintiff's cellmate. SID found that Saleh, also a practicing Muslim, exerted influence over other Muslim inmates. Saleh and the plaintiff had been cellmates for eleven years.

SID interviewed the plaintiff as part of its investigation into the alleged escape plot and prepared a written report concerning his potential involvement. In its report, SID stated that "no direct information was found to prove that [the plaintiff] had been involved in planning elements of an escape," and that a search of his property disclosed no information

2

relating to an escape plan.  Even so, the plaintiff had "housed with Saleh for the past (11) years" and "admittedly would know if Saleh was 'involved' in something," which caused SID "serious concern."  The report added that the plaintiff "became evasive when asked about Saleh's activities and his knowledge of an escape plot" and "refused to submit to a polygraph examination."  The report also stated that the plaintiff was found in possession of 24 word processor disks containing an "extensive array of Islamic writings."

On March 11, 2006, plaintiff was given written notice that New Jersey DOC officials intended to transfer him to another state.  The notice showed that he had been recommended for transfer to a state "with a low Muslim population to reduce the potential [he would] use his knowledge of Islam in order to influence other Muslim inmates."

Three days later, a hearing was held regarding the proposed transfer.  Relying on the SID report, the hearing officer approved the transfer on the grounds that plaintiff may have had knowledge of Saleh's escape plan, maintained influence over Muslim inmates, and most likely planned to disrupt the facility's security.

In April 2006, a representative of the New Jersey DOC contacted defendant Lynn Milling and requested that Connecticut accept plaintiff as a transferee under the Interstate Corrections

Compact for "safety and security" reasons.  Milling was told that plaintiff's cellmate had attempted to convey explosives into the New Jersey facility to blow out a wall and that plaintiff was then housed in maximum custody.  Milling agreed to accept the plaintiff.

On April 24, 2006, the plaintiff was involuntarily transferred to Connecticut.  On that day, Milling sent a memorandum to defendant Fred Levesque, DOC's Director of Offender Classification and Population Management.  After summarizing the SID report, the memorandum recommended that plaintiff be placed in administrative segregation for a "period of adjustment" to monitor his behavior due to his "possible knowledge for escape plots in the NJDOC."  Attached to the memorandum were the SID report, the New Jersey DOC notice of intent to seek nonconsensual transfer, the New Jersey DOC decision regarding the transfer, and a letter from the plaintiff to New Jersey DOC officials urging that he not be transferred out of state.  Milling's memorandum noted that the plaintiff and his New Jersey cellmate "were found to have influence over other Muslim inmates."

On April 25, 2006, plaintiff was given written notice of an administrative segregation hearing.  The notice informed him that the hearing had been scheduled because the New Jersey DOC had identified him as possibly involved in escape plans and because he posed a threat to the security of Connecticut correctional

4

facilities.  Plaintiff met with an advocate in advance of the hearing.

On April 28, 2006, an administrative segregation hearing was held.  Plaintiff denied being part of an escape plan.  Plaintiff also gave the hearing officer, defendant Steve Clapp, a detailed letter explaining that New Jersey DOC officials chose to house him in a cell with Saleh.  Plaintiff pointed out that under New Jersey's prison rules he was allowed to purchase and have in his cell the religious materials found during the search and that he never received disciplinary charges in New Jersey stemming from the SID investigation.

Clapp signed a report recommending that plaintiff be placed in administrative segregation because of his possible knowledge of conveying explosives into the New Jersey prison with the intent to escape.  Clapp noted that he was relying on Milling's memorandum to Levesque and the SID report.

Pursuant to DOC Administrative Directive 9.4(12)(c), Clapp submitted his written recommendation to Levesque for review.  Levesque reviewed the recommendation, the SID report, Milling's memorandum and plaintiff's statements.  He then authorized plaintiff's placement in administrative segregation.

Levesque has averred that his decision was based solely on concerns for safety, security and order.  He has stated that he "made the same decisions in this case as [he] would have

5

regarding any Connecticut inmate who had been referred for possible classification to A.S. based on potential escape and knowledge of explosives being conveyed into a facility."

Plaintiff received notice that he would be reviewed for removal to the general population after three months if he displayed positive behavior. Plaintiff appealed his placement to Levesque, who responded by letter that plaintiff was placed in administrative segregation to ensure he is not a threat to the safety of Connecticut facilities. Plaintiff remained in administrative segregation at Northern for approximately four months.[2]

Plaintiff was confined in his cell at Northern, a level 5 supermax prison, for 23 hours a day. He was served meals in his cell, given one hour of recreation in a cage five days a week, allowed fewer guest visits than general population inmates, denied programming opportunities and denied the ability to earn work credits toward reducing his projected release date. During his first month, when taken out of his cell, he was handcuffed behind his back and secured with leg irons. Subsequently, he was handcuffed in front when out of his cell.

Plaintiff filed suit in the New Jersey Superior Court. See

---

[2] After plaintiff completed three months in administrative segregation, officials at Northern recommended that he be removed to the general population. Levesque reviewed the classification recommendation and approved plaintiff's removal from administrative segregation.

Sheika v. N.J. Dep't of Corr., 928 A.2d 878 (N.J. Super. Ct. App. Div. 2007). On July 30, 2007, the Appellate Division of the New Jersey Superior Court ordered the New Jersey DOC to provide plaintiff a new hearing within ninety days. Id. at 884. The court held that plaintiff was not given adequate notice of the charges against him, denied effective assistance of a counsel-substitute, and incorrectly denied a limited right to cross-examine adverse witnesses and call witnesses on his own behalf. Id. at 882-84. The court also found plaintiff's "concern that his transfer resulted from religious bias to have a colorable foundation." Id. at 884. Plaintiff was transferred to New Jersey DOC custody on August 22, 2007. A new interstate transfer hearing was held on October 11, 2007. The hearing officer denied the request for an interstate transfer and Sheika was returned to New Jersey.

II. Discussion

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact." A defendant's motion for summary judgment may be granted when the evidence in the record would not permit a jury to return a verdict in favor of the plaintiff. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In determining whether this

standard is met, the court gives credence to any evidence favorable to the plaintiff.  Evidence favorable to the defendant, on the other hand, is disregarded unless it is undisputed or comes from a neutral source and is uncontradicted and unimpeached.  See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150-51 (2000)(discussing identical standard under Fed. R. Civ. P. 50).

A.  Retaliation

Plaintiff claims that he was placed in administrative segregation in retaliation for exercising his First Amendment right to practice his religion.  To sustain this claim, plaintiff must establish that (1) he engaged in protected activity, (2) the defendants took adverse action against him, and (3) there was a causal connection between the protected activity and the adverse action.  See Scott v. Coughlin, 344 F.3d 282, 287 (2d Cir. 2003). Plaintiff can sustain his burden with regard to causation by demonstrating that his protected conduct was a substantial or motivating factor for the challenged decision.  Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003).  If the evidence supports a reasonable inference that the protected activity was a motivating factor in the challenged decision, the defendants may prevail if they prove the same decision would have been made even in the absence of the protected activity.  See Hynes v. Squillace, 143 F.3d 653, 657 (2d Cir. 1998)(quoting Graham v. Henderson, 89 F.3d

8

75, 79 (2d Cir. 1996))(in turn quoting Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 287 (1977)); Lowrance v. Achtyl, 20 F.3d 529 (2d Cir. 1994); Sher v. Coughlin, 739 F.2d 77, 81 (2d Cir. 1984).

The first two elements of the plaintiff's retaliation claim are satisfied. The record supports a finding that the plaintiff, while incarcerated in New Jersey, practiced his religion by collecting and studying Islamic writings in his cell. Defendants do not dispute that this is protected activity under the First Amendment. With regard to the second element, plaintiff must show that the alleged retaliatory conduct would deter a reasonable prisoner from exercising his constitutional rights. See Dawes v. Walker, 239 F.3d 489, 493 (2d Cir. 2001). Defendants do not deny that placement in administrative segregation at Northern for an extended period would have this effect.

To satisfy his burden on the third element of the retaliation claim, plaintiff must show a causal link between his protected activity in New Jersey and his placement in administrative segregation in Connecticut. The record shows that the defendants were aware of the plaintiff's protected activity in New Jersey. But it does not support a reasonable finding that the decision to put him in administrative segregation was borne of animus against his protected activity.

9

Even assuming the evidence permits a reasonable inference that the plaintiff's protected activity was a motivating factor in the challenged decision, which I do not believe it does, the defendants are entitled to summary judgment because the undisputed facts show the same decision would have been made on a valid basis alone. See Sher, 739 F.2d at 82; see also Salahuddin v. Perez, No. 06-2078, 216 Fed. Appx. 69, at *1 (2d Cir. 2007). The defendants persuasively argue that placing the plaintiff in administrative segregation was necessary given the information they had at the time regarding his potential knowledge of, and involvement in, Saleh's alleged plot to escape using explosives. Though the SID report contained no direct evidence that the plaintiff knew about the plot, the information contained in the report, whether true or false, fully justifies the defendants' decision. According to the report, the plaintiff admitted he would know if Saleh was up to something, was evasive when questioned about his knowledge of the alleged plot, and refused to take a polygraph. On this record, I think a reasonable jury would have to agree that the challenged decision would have been made in any event. See Sher, 739 F.3d at 82.

B. Due Process

To establish a violation of procedural due process, plaintiff must show that he had a protected liberty interest in not being placed in administrative segregation and that he was

10

not afforded adequate process in connection with the placement. Wilkinson v. Austin, 545 U.S. 209, 223-24 (2005). Defendants have moved for summary judgment on the grounds that plaintiff's placement in administrative segregation did not implicate a liberty interest protected by the Fourteenth Amendment and, even if it did, there was no due process violation.

Defendants' motion for summary judgment is granted as to this claim because, assuming without deciding that plaintiff had a protected liberty interest, the process he received was adequate. He was given advance written notice of the factual basis for placing him in administrative segregation, an opportunity for rebuttal and an explanation of the decision, which was supported by some evidence.

Plaintiff contends that his right to procedural due process was violated because the decision to place him in administrative segregation was unsupported by evidence, as distinguished from speculative, conclusory assertions. However, the defendants' concern that the plaintiff might have known about Saleh's alleged plot to use explosives to escape was supported by circumstantial evidence listed in the SID report, specifically, plaintiff's close association with Saleh as his cellmate for eleven years, his admission that he would know if Saleh was up to something, his evasiveness when asked about Saleh's alleged plan to escape, and his refusal to take a polygraph, all of which caused SID to

11

regard the plaintiff's potential involvement as a "serious concern."

III. Conclusion

Accordingly, defendants' motion for summary judgment (doc. 26) is hereby granted.  The Clerk may enter judgment in favor of the defendants and close the case.

So ordered this 20th day of April 2011.

/s/ RNC
Robert N. Chatigny
United States District Judge